UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN CHEMICAL
TECHNOLOGIES, INC.,

        Plaintiff,                        Case No. 17-cv-13433
                                                  Hon. Mark A. Goldsmith
vs.

COMERICA BANK,

        Defendant.
_____/

**OPINION & ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 23)**

This case concerns a wire transfer facilitated by Defendant Comerica Bank ("Comerica") at the request of Plaintiff American Chemical Technologies, Inc. ("ACT"). ACT intended to transfer funds to a bank in Belgium, but due to certain information that ACT provided Comerica, Comerica sent the funds to a bank in the Netherlands instead. ACT filed the instant case against Comerica, and Comerica has now filed a motion for summary judgment (Dkt. 23). The motion has been fully briefed, including supplemental briefing. Because oral argument will not aid the decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons that follow, the Court finds that ACT's claims are time-barred and grants Comerica's motion.

      **I.**      **BACKGROUND**

ACT is a longtime customer of Comerica. Defs. Statement of Material Facts ("DSMF"), ¶ 1 (Dkt. 23). In late 2014, ACT began negotiating a purchase of stock in Schulze & Partner,

1

eventually agreeing that ACT's President, Kevin Kovanda, would purchase 86% of Schulze & Partner's stock. Id. ¶ 2.

On December 22, 2015, Kovanda received an email from a Mr. Schulze, the owner of Schulze & Partner. Id. ¶ 3. The email contained two PDF attachments, which contained wiring instructions for the first installment payment that identified Schulze as the wire beneficiary by name and account number in International Bank Account Number ("IBAN") format (BE25xxxx4882), and identified Schulze's beneficiary bank by name (ING Bank) and Bank Identification Code ("BIC") (BBRUBEBB). Id. Later that same day, Kovanda received a second email from Schulze with two more PDF attachments consisting of modified versions of the purchase agreement. Id. ¶ 4. These included a different IBAN for Schulze's beneficiary account (NL50xxxx6970) and a different BIC for Schulze's beneficiary bank (INGBNLA). Id.[1]

BBRUBEBB is the BIC for ING Belgique N.V. or ING Belgium. Id. ¶ 5. INGBNL2A is the BIC code for ING Bank N.V., which is located in the Netherlands. Id.

On January 8, 2016, Kovanda went to a Comerica branch in Naples, Florida, to instruct Comerica to facilitate a payment by ACT to Schulze, via wire transfer. Id. ¶ 6. Comerica employee Sarai Sanchez waited on Kovanda. Id. Kovanda handed Sanchez a piece of paper containing the second set of wiring instructions that he received from Schulze; Sanchez used this information to input ACT's payment order into digital format. Id. ¶ 7.

Sanchez printed a Payment Order Request form, which reflected "ING Bank" in Belgium as the beneficiary bank, with BIC "INGBNL2A." Payment Order Request, Ex. 1 to Def. Mot.

---

[1] The "NL" on the second IBAN indicates that the beneficiary bank country is the Netherlands, Plaintiff's Statement of Material Facts ("PSMF") ¶ 2 (Dkt. 24); "BE" in the first IBAN presumably indicates Belgium.

(Dkt. 23-2). (In other words, the form shows the BIC from Schulze's second email.) The form also reflected that the IBAN of the beneficiary was "NL50xxxx6970" (that is, the IBAN from the second email). Id. Kovanda reviewed and signed the Payment Order Request. DSMF ¶ 7. While this included an acknowledgement that Kovanda had received the "wire transfer terms," Kovanda testified that he did not recall receiving any such documents. Kovanda Dep. Tr., Ex. 28 to Def. Mot., at 68-69 (Dkt. 23-29).

Sanchez then entered the values in the Payment Order Request into Comerica's PayPoint application. DSMF ¶ 8. Sanchez submitted the transaction for further processing in the Comerica wire room. Id. ¶ 10. When Sanchez received confirmation that the wire transfer had been executed, she printed a receipt and gave it to Kovanda. Id. ¶ 11. Like the Payment Order Request, the Payment Order Receipt shows the beneficiary bank as "ING Bank" in Belgium but the BIC "INGBNL2A." Payment Order Receipt, Ex. 14 to Def. Mot. (Dkt. 23-15). This same day, Comerica debited ACT's account in the amount of $393,519.25. DSMF ¶ 11. ACT's next monthly account statement showed this debit as "Wire #521221 Bnf Rudolph Schulze Swf #429038." Id.

The funds transfer did, in fact, go to ING Bank. Id. ¶ 12. On January 22, 2016, Schulze began contacting Kovanda about the January 8 funds transfer which never arrived. Id. ¶ 13. Schulze later asserted that the second set of wiring instructions were fraudulent as to the beneficiary IBAN and beneficiary bank BIC. Id.

In a January 23, 2016 email, Kovanda wrote to Julie Nowicki, a Comerica employee:

> Hi Julie:
>
> Here is the wire receipt. In looking it over again, I hope is [sic] got held up as the beneficiary bank and country say Belgium, but the account number ending in 6970 (IBAN) starts with NL50 which is the Netherlands. Hope this helps. Le[t] me know what you find out.
>
> Best regards,

3

Kevin

1/23/2016 Email, Ex. H to Pl. Resp. (Dkt. 24-9).

After this point, Nowicki and Kovanda corresponded via email several times. On January 25, 2016, Nowicki wrote to Kovanda saying, "Since this is looking more and more like fraud, would you please call our Customer Fraud hotline at 855-95FRAUD (option 1)." Emails, Ex. I to Pl. Resp., at PageID.920 (Dkt. 24-10). Kovanda informed her that he sent the documents (presumably to the fraud department) later that day. Id. at PageID.921. On January 27, Nowicki emailed Kovanda to ask if there was "[a]ny word from our Fraud department? They've taken over for us." Id. at PageID.922.

On February 4, Kovanda emailed Nowicki asking if <u>she</u> had "[a]ny word from the Fraud Department? I have not heard a thing." Id. at PageID.923. Nowicki responded that she had not heard anything, but would "try to reach someone right now." Id. On March 30, Kovanda emailed Julie again, "[j]ust checking to see what the status is on the fraudulent wire. I have heard nothing and am getting a little impatient. Let me know. Thx[.]" Id. at PageID.924. Nowicki forwarded this email to two other people, asking for an update and saying that "this is a wonderful 20+ year customer." Id.

During this time, Comerica employees were working with the Secret Service to determine what had happened. See, e.g., 3/31/3016 Email, Ex. K to Pl. Resp., at PageID.944 (Dkt. 24-12) (U.S. Secret Service employee writing, "I've reached out my counterparts in The Hague and they're going to determine whether an MLAT (Intl. Search Warrant) is requested to check the balance of the account. I'll let you know what they determine . . . ."). In April, Comerica employee Susan Rutledge-Reeves emailed Kovanda, telling him to answer certain questions and send his responses to a Secret Service Agent. Id. at PageID.956. Kovanda did get in direct contact with

4

the Secret Service Agent. Id. at PageID.959. Finally, on July 8, 2016, ACT's attorney sent a letter to Comerica, saying that ACT had not received any information from Comerica since it reported the fraud in February. See 7/8/2016 Letter, Ex. L to Pl. Resp. (Dkt. 24-13). The attorney asked for "assistance in locating the person at Comerica who is responsible for investigating and following up with ACT on ACT's complaint of fraud." Id.

ACT filed its complaint against Comerica in state court over a year later, on September 13, 2017. ACT brings the following claims: (i) breach of contract; (ii) violation of the UCC - Funds Transfers, Mich. Comp. Laws § 440.4601 et seq.; (iii) breach of fiduciary duty; and (iv) negligence.

## II. STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. Scott, 550 U.S. at 380; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical

doubt as to the material facts," Scott, 550 U.S. at 380 (quoting Matsushita, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," id. (quoting Anderson, 477 U.S. at 247-248) (emphasis in original); see also Babcock & Wilcox Co. v. Cormetech, Inc., 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.").

### III. ANALYSIS

Comerica first argues that this case should be dismissed because ACT failed to bring its claim within the contractually-agreed statute of limitations. Def. Mot. at 10. The Business and Personal Deposit Account Contract, which governed the parties' deposit relationship on January 8, 2016, provides as follows:

> **Section 3.08 Limitation of Actions.** You acknowledge that the reconstruction of events causing you to sustain damages becomes difficult and may be inaccurate more than one year following the occurrences of such events. Therefore, you agree that any claim, action, suit, arbitration or other proceeding against us for damages resulting in any respect from our acts or omissions must be brought within one year from the date of our alleged act or omission.

Deposit Agreement, Ex. 16 to Def. Mot. at 10, § 3.08 (Dkt. 23-17). Comerica argues that ACT's alleged loss occurred on January 8, 2016, and disputes over the account debit are subject to the contractual limitations provision in the Deposit Agreement. ACT did not file its action until September 18, 2017 – well over a year later.

In response, ACT argues that it notified Comerica that Comerica did not wire the funds to ING Bank in Belgium as ACT had requested on January 25, 2016 – just two weeks after the January 8, 2016 wire transfer. Pl. Resp. at 14 (Dkt. 24). On January 25, 2016, ACT notified Comerica's fraud department and submitted a fraud claim. Id. at 14-15 (citing Pls. Exs. H and I).

Comerica's fraud department told ACT to file a claim with the U.S. Secret Service, which ACT did. Id. at 15. Comerica demanded a freeze on the Netherlands account, and participated in the fraud claim with the secret service. Id. ACT then repeatedly sought updates from Comerica on its fraud claim. Id. Thus, ACT argues that because it submitted its fraud claim seventeen days after the wire transfer occurred, it was submitted within one year and was timely. Id.

"[A]n unambiguous contractual provision providing for a shortened period of limitations is to be enforced as written unless the provision would violate law or public policy." Rory v. Cont. Ins. Co., 703 N.W.2d 23, 31 (Mich. 2005); In re Alfes, 709 F.3d 631, 640 (6th Cir. 2013) ("The limitations period for asserting a claim can be abridged by contract."). Notably, ACT does not claim that the one-year statute in the Deposit Agreement does not apply; instead, it argues that it submitted its fraud "claim" on January 25, 2016. Pl. Resp. at 14.

The Court finds that ACT did not bring a claim, as required by the Deposit Agreement, within a year of the fraudulent transfer. The contractual language refers to "any claim, action, suit, arbitration or other proceeding <u>against us for damages</u>," Deposit Agreement § 3.08 (emphasis added), and the emails from Kovanda to Comerica in January 2016 are not a claim against Comerica for damages. He is simply notifying Comerica of what he believed to be fraud, and asking for help in resolving the matter. There is no indication that he intends to seek damages <u>from Comerica</u> if its employees are unable to help him. Comerica and ACT are working together at that point to determine what happened. Even the June 2016 letter from ACT's attorney does not notify Comerica that ACT believes Comerica to be liable; ACT again seems to be simply seeking help to have its concerns addressed. ACT did not bring a claim <u>against</u> Comerica for damages until it filed the instant lawsuit in September 2017.

As such, ACT's claims are time-barred. Summary judgment in favor of Comerica is warranted.

## IV. CONCLUSION

For the reasons provided, Defendant Comerica Bank's motion for summary judgment (Dkt. 23) is granted. Comerica's motion in limine (Dkt. 35) is denied as moot.

SO ORDERED.

Dated: March 4, 2019    s/Mark A. Goldsmith
Detroit, Michigan    MARK A. GOLDSMITH
United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 4, 2019.

s/Kristen MacKay for Karri Sandusky
Case Manager